# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| PALLADIUM USA, INC., | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:25-cv-03569 |
| | § | |
| DIANA NICKELL d/b/a | § | |
| TEXAS PALLADIUM PROPERTIES, | § | |
|    Defendant. | § | |

### DEFENDANT'S REPLY IN FURTHER SUPPORT OF
### MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

**COVER PAGE**

# **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. PLAINTIFF'S OPPOSITION CONFIRMS THE COMPLAINT'S FATAL DEFICIENCIES 1

   A. Plaintiff Misunderstands the Difference Between Pleading Requirements and Ultimate Proof...... 1

   B. The Cases Plaintiff Cites Actually Demonstrate Why This Complaint Fails....................................2

      1. Jim S. Adler Required Specific Factual Allegations of a Systematic Deceptive Scheme..... 2

      2. YETI Included Photographic Evidence Attached to the Complaint.......................................3

      3. Young Involved a Celebrity Athlete with Exceptional Public Recognition...........................3

   C. Plaintiff's "Sufficient Facts" Are Merely Conclusory Allegations of Legal Elements....................4

III. THE COMPLAINT ESTABLISHES DESCRIPTIVE FAIR USE ON ITS FACE ..................5

   A. Geographic Terms and Generic Descriptors Constitute Paradigmatic Fair Use ..............................5

   B. The Complaint Alleges No Facts Negating the Elements of Fair Use ..............................................6

   C. Plaintiff Mischaracterizes What Fair Use Requires ........................................................................7

IV. THE TRADEMARK MODERNIZATION ACT DOES NOT LOWER PLEADING STANDARDS .................................................................................................................................8

   A. The TMA Creates an Evidentiary Presumption at the Injunction Stage Only .................................8

   B. Congressional Intent Focused on Injunction Standards, Not Pleading Requirements .....................9

   C. Irreparable Harm Is Not an Element Requiring Pleading at the Complaint Stage ...........................9

VI. CONCLUSION ........................................................................................................................10

# TABLE OF AUTHORITIES

**US SUPREME COURT CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................... 2, 4

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
    543 U.S. 111 (2004) ........................................................................................................ 6

eBay Inc. v. MercExchange, 547 U.S. 388 (2006) .......................................................... 9

**FEDERAL CASES**

*Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*,
    10 F.4th 422 (5th Cir. 2021)....................................................................................... 1, 2

*YETI Coolers, LLC v. JDS Industries, Inc.*,
    300 F. Supp. 3d 899 (W.D. Tex. 2018).......................................................................... 3

*Young v. Vannerson*,
    612 F. Supp. 2d 829 (S.D. Tex. 2009) ........................................................................... 3

*Viacom Int'l, Inc. v. IJR Capital Invs., L.L.C.*,
    891 F.3d 178 (5th Cir. 2018).......................................................................................... 4

*Future Proof Brands, LLC v. Molson Coors Beverage Co.*,
    982 F. 3d 280, 296 (5th Cir.)......................................................................................... 4

*Bank of Texas v. Commerce Southwest, Inc.*,
    741 F.2d 785 (5th Cir. 1984) ........................................................................................ 5

*Zatarain's, Inc. v. Oak Grove Smokehouse, Inc.*,
    698 F.2d 786, 791 (5th Cir. 1983) ................................................................................ 6

*Sugar Busters LLC v. Brennan*,
    177 F.3d 258 (5th Cir. 1999).......................................................................................... 7

*Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co.*,
    80 F.4th 536 (5th Cir. 2023).......................................................................................... 8

*Nichino Am., Inc. v. Valent U.S.A. LLC*,
    44 F.4th 180 (3d Cir. 2022)........................................................................................... 8

*Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*,
    851 F.3d 440, 450 (5th Cir. 2017)................................................................................. 9

**STATE CASES**

*Texas Tamale Co. v. CPUSA2, LLC,*
    3341, 2022 WL 20717360 (S.D. Tex. Oct. 20, 2022) ............................................................. 1

**FEDERAL STATUTES**

Title 15 U.S.C. § 1116(a) .................................................................................................................. 8

**FEDERAL RULES**

Fed. R. Civ. P. 8 ................................................................................................................................ 1

Rule 12(b)(6) ................................................................................................................................ 8, 9

Fed. R. Evid. 301 .............................................................................................................................. 9

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF**
**MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

Defendant Diana Nickell d/b/a Texas Palladium Properties respectfully submits this Reply in further support of her Motion to Dismiss and, in doing so, demonstrates that Plaintiff's Opposition confirms rather than refutes the fatal deficiencies in the Complaint.

## I. INTRODUCTION

Plaintiff's Opposition rests on a fundamental misunderstanding of what Federal Rule of Civil Procedure 8 requires at the pleading stage. The Supreme Court and Fifth Circuit have made clear that trademark plaintiffs must allege specific facts showing *how* consumer confusion occurs, not merely recite statutory elements with conclusory assertions that confusion is "likely." Plaintiff's cited authorities actually demonstrate why this Complaint fails, as each involved detailed factual allegations or documentary evidence entirely absent here. Moreover, Plaintiff's attempt to invoke the Trademark Modernization Act misconstrues that statute's narrow application to preliminary injunction proceedings and ignores settled law that fair use can be—and here is—established on the face of a complaint that alleges only descriptive use of geographic and generic terms.

## II. PLAINTIFF'S OPPOSITION CONFIRMS THE COMPLAINT'S FATAL DEFICIENCIES

### A. Plaintiff Misunderstands the Difference Between Pleading Requirements and Ultimate Proof

Plaintiff correctly notes that courts applying the "digits of confusion" need not conduct "comprehensive, factor-by-factor analysis" at the motion to dismiss stage. Opposition at 5 (citing *Texas Tamale Co. v. CPUSA2, LLC*, No. 21-CV-3341, 2022 WL 20717360, at *3 (S.D. Tex. Oct. 20, 2022)). But Plaintiff misapprehends what this principle means. The absence of factor-by-factor analysis does not excuse the absence of factual allegations. Plaintiff must still allege "specific factual allegations describing *how* the use" creates confusion—factual content beyond "the mere" assertion of infringement. *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 429 (5th Cir. 2021) (emphasis added).

The distinction is critical. Plaintiff need not prove each confusion factor with evidence at this stage, but Plaintiff must plead facts that make confusion plausible given the specific circumstances alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). <u>Here, Plaintiff has done neither</u>. The Complaint alleges that both parties operate "in the real estate sector" but provides <u>no facts</u> about whether they serve the same customers, use the same channels, or compete in the same market segments. It alleges Defendant uses "TEXAS PALLADIUM PROPERTIES" but provides no facts about *how* this mark—which includes the clearly geographic descriptor "Texas" and the generic term "Properties"—could confuse consumers familiar with Plaintiff's bare "PALLADIUM" mark in the context of large-scale multifamily development versus individual residential brokerage.

**B. The Cases Plaintiff Cites Actually Demonstrate Why This Complaint Fails**

Plaintiff's reliance on *Jim S. Adler*, *YETI Coolers*, and *Young v. Vannerson* is misplaced, as each case involved factual circumstances very different from those alleged here.

*1. <u>Jim S. Adler</u> Required Specific Factual Allegations of a Systematic Deceptive Scheme*

In *Jim S. Adler*, the Fifth Circuit permitted the complaint to proceed only because the plaintiff alleged concrete details about "how the use of the Adler marks as keyword terms—combined with generic, unlabeled advertisements and misleading call-center practices—caused initial interest confusion." 10 F.4th 422, 429 (5th Cir. 2021). The complaint described how defendant's employees answered phones using generic greetings without identifying the firm, sought to build rapport with callers before disclosure, and kept confused consumers engaged "as long as possible in a bait-and-switch effort." *Id.* at 425. The plaintiff also alleged defendant bid "increasingly higher amounts" to ensure ads appeared prominently and used click-to-call functionality preventing consumers from seeing defendant's website. *Id*. Additionally, the proposed amended complaint included a double-blind consumer survey showing 34-44% confusion rates. *Id.* at 426.

Here, the <u>Complaint contains none of these specific factual details</u>. Plaintiff alleges no systematic scheme to confuse, no deceptive practices, no survey evidence, and no concrete examples

of how Defendant's use of clearly descriptive geographic and generic terms alongside "Palladium" creates confusion. The *Adler* decision actually supports dismissal because it demonstrates the level of factual specificity required—specificity entirely absent from Plaintiff's Complaint.

### *2. YETI Included Photographic Evidence Attached to the Complaint*

Plaintiff cites *YETI Coolers, LLC v. JDS Industries, Inc.*, 300 F.Supp.3d 899 (W.D. Tex. 2018), but that case permitted the complaint to proceed because the plaintiff attached photographs showing defendant's actual use of "Better YET!" marks alongside YETI's protected marks. *Id.* at 906. This documentary evidence transformed potentially conclusory allegations into well-pleaded factual claims. The court explicitly noted that YETI had "included photographic evidence" that compensated for the absence of other details about the alleged infringer's use. *Id.*

Plaintiff here has attached no photographs, no screenshots, no web captures, and no documentary evidence whatsoever showing Defendant's actual use or explaining how such use creates confusion. The comparison to *YETI* thus highlights the deficiency of Plaintiff's bare allegations rather than supporting them.

### *3. Young Involved a Celebrity Athlete with Exceptional Public Recognition*

In *Young v. Vannerson*, 612 F.Supp.2d 829 (S.D. Tex. 2009), the court found plausible allegations where the plaintiff was a nationally famous NFL quarterback with widespread recognition from national awards, championship game MVP honors, Sports Illustrated cover appearances, video game cover features, and NFL Rookie of the Year status. The court emphasized Young had "sufficient fame and reputation" that consumers would presume a connection with any VY-branded products based on celebrity status alone. *Id.* at 847.

Plaintiff here is not a celebrity with comparable fame and widespread public recognition. Plaintiff is a corporate entity whose services in large-scale multifamily development operate in fundamentally different channels from Defendant's individual residential brokerage services. The *Young* decision's analysis of common-law trademark rights based on extraordinary fame provides

no support for Plaintiff's allegations of confusion in the commercial real estate context.

## C. Plaintiff's "Sufficient Facts" Are Merely Conclusory Allegations of Legal Elements

Plaintiff contends it has "allege[d] more than enough to state a plausible claim" by alleging that marks are "strong," services are "the same or overlapping," and Defendant continued use "with full knowledge" of Plaintiff's rights. Opposition at 1, 6. But these are precisely the type of "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that *Iqbal* teaches "do not suffice." 556 U.S. at 678.

Consider Plaintiff's allegations concerning each supposed basis for confusion:

- **Strength of Mark:** Plaintiff alleges its marks are "strong" and "well-known" (Compl. ¶¶ 20, 30) but provides no factual basis for this conclusion beyond the existence of registrations. The mere existence of a registration does not establish strength for likelihood of confusion analysis. *Viacom Int'l, Inc. v. IJR Capital Invs., L.L.C.*, 891 F.3d 178, 185 (5th Cir. 2018). Plaintiff alleges no facts about advertising expenditures, sales figures, market surveys, media coverage, or any other objective indicia of actual market recognition.

- **Similarity of Services:** Plaintiff alleges both parties provide "real estate-related services" (Compl. ¶ 11) but provides no facts showing the services are actually similar in nature, scope, or market positioning. The Complaint's own allegations reveal fundamental differences: Plaintiff is "dedicated to identifying high-quality urban development and redevelopment opportunities" and "managing projects of any scale, guiding them through all phases, including conceptual selection, site planning, design, cost estimation, construction, lease-up, management, and unit sales" (Compl. ¶ 8), while Defendant "provides real estate-related services throughout the Texas Gulf Coast region" (Compl. ¶ 11). These vague descriptions suggest entirely different business models—institutional development versus retail brokerage—but <u>Plaintiff alleges no facts</u> explaining why consumers would confuse these distinct services.

- **Intent:** Plaintiff alleges Defendant acted "with full knowledge" of Plaintiff's "prior registrations" (Compl. ¶ 22) but this allegation fails for two reasons. First, knowledge alone does not establish bad faith intent. The Fifth Circuit has held that "mere awareness of the senior user's mark does not establish . . . bad intent." *Future Proof Brands, LLC v. Molson Coors Beverage Co.*, 982 F. 3d 280, 296 (5th Cir.). Second, the alleged "knowledge" comes only from Plaintiff's February 2025 cease-and-desist letter (and only after Defendant confirmed it was legitimate)—eight years after Defendant began using the name, which she independently developed based on the common descriptor and precious metal "palladium," which is used to make coins and jewelry. The Complaint provides no factual basis for inferring Defendant had knowledge of Plaintiff's claimed rights when she adopted "Texas

Palladium Properties" in 2017.

- **Channels and Purchasers:** The Complaint is entirely silent about whether the parties market through the same channels or to the same class of purchasers. This silence is fatal because it precludes any reasonable inference that consumers would encounter both marks in circumstances creating confusion.

These deficiencies cannot be cured by Plaintiff's assertion that comprehensive factor analysis is unnecessary at the pleading stage. The question is not whether Plaintiff must prove each factor, but whether Plaintiff has alleged facts making confusion plausible. Plaintiff has not.

### III. THE COMPLAINT ESTABLISHES DESCRIPTIVE FAIR USE ON ITS FACE

**A. Geographic Terms and Generic Descriptors Constitute Paradigmatic Fair Use**

Plaintiff argues that "the Complaint does not facially establish that Defendant uses the word 'palladium' as part of the composite marks TEXAS PALLADIUM or TEXAS PALLADIUM PROPERTIES to describe some aspect of her real estate services." Opposition at 8. This argument fundamentally misunderstands both the Complaint's allegations and the fair use doctrine.

The Complaint itself alleges that Defendant uses "TEXAS PALLADIUM PROPERTIES" and "TEXAS PALLADIUM" "in connection with her real estate services." Compl. ¶¶ 11-12. The Complaint does not allege—and cannot plausibly allege—that Defendant uses these terms in any manner other than to describe a Texas-based business dealing with real estate properties. Geographic terms like "Texas" are inherently descriptive under Lanham Act § 2(e)(2) and are paradigmatic cases for fair use protection. In *Bank of Texas v. Commerce Southwest, Inc.*, the Fifth Circuit found "Bank of Texas" geographically descriptive and entitled to limited protection, such that other banks operating in Texas could use "Texas" and "Banc" in their marks. 741 F.2d 785 (5th Cir. 1984).

Similarly, "Properties" is an admittedly generic term for real estate. When Defendant combines the geographic descriptor "Texas," the term "Palladium," and the generic term "Properties," she is using these words descriptively to identify the geographic location and nature of her services—precisely the type of fair use that § 1115(b)(4) protects.

A defendant asserting fair use "has no independent burden to negate the likelihood of any confusion . . . ." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 124 (2004). The Supreme Court recognized that "some possibility of consumer confusion must be compatible with fair use" and that the plaintiff bears the burden of proving likelihood of confusion as part of the prima facie case. *Id.* at 121-22. When the complaint itself shows defendant's use is descriptive—as here, where Defendant uses geographic and generic terms to describe location and services—the fair use defense is established on the face of the pleadings.

**B. The Complaint Alleges No Facts Negating the Elements of Fair Use**

Under the Fifth Circuit's three-part test established in *Zatarain's, Inc. v. Oak Grove Smokehouse, Inc.*, fair use requires: (1) the term is used otherwise than as a mark, (2) used fairly and in good faith, and (3) only to describe goods or services of a party, or their geographic origin. 698 F.2d 786, 791 (5th Cir. 1983). The Complaint fails to allege facts negating any of these elements.

- **Use Otherwise Than as a Mark:** The Complaint alleges Defendant uses "TEXAS PALLADIUM PROPERTIES" as her business name, but using a descriptive business name to identify one's services does not preclude fair use. The *Zatarain's* court explained that defendants remain "free to use the words . . . in their ordinary, descriptive sense, so long as such use will not tend to confuse customers as to the source of the goods." *Id.* at 796. Here, "Texas" describes geographic location, "Palladium" is a precious metal with atomic no. 46 on the periodic table of the elements (making it descriptive like "platinum," "gold," or "silver," which is no. 47 on the periodic table), and "Properties" generically describes real estate. The combination describes a Texas-based real estate business—a descriptive use, not trademark use.

- **Good Faith:** The Complaint provides no factual basis for inferring bad faith. Plaintiff's only allegation is that Defendant received a cease-and-desist letter in February 2025 and continued using the name. But continued use after receiving a cease-and-desist letter—particularly when the recipient reasonably believes the use is lawful—does not establish bad faith. The *Zatarain's* court found good faith when defendants consciously packaged products to minimize confusion, never attempted to register the terms as trademarks, and believed the terms were generic. 698 F.2d at 796. Defendant here has used the name since 2017 with her own distinctive branding (as evidenced by her website and business materials), has filed it as an assumed name in public records, and has operated transparently in the Houston real estate market.

- **Descriptive Use Only:** The Complaint alleges Defendant uses the name "in connection with" her "real estate services" (Compl. ¶ 11) but provides no facts suggesting Defendant uses these terms for any purpose *other* than to describe the geographic location and nature of her services—that is, they are precious like silver, gold, or platinum. (Defendant came up with the name years ago when she heard about the U.S. Mint's American Palladium Eagle one ounce coins, the official palladium bullion coins of the United States.) This is precisely the type of descriptive use § 1115(b)(4) protects.

### C. Plaintiff Mischaracterizes What Fair Use Requires

Plaintiff argues the Complaint "alleges the opposite: that Defendant is using TEXAS PALLADIUM and TEXAS PALLADIUM PROPERTIES as source identifiers—*i.e.*, as marks—for her business and real estate services." Opposition at 8 (citing Compl ¶¶ 11-13, 15). But this argument proves too much. Every business name serves to some degree as a source identifier—that is the nature of commercial nomenclature. The question for fair use is whether the terms are used *primarily* as trademarks to indicate source, or *primarily* in their descriptive sense to convey information about the nature or location of services.

When a party combines a geographic descriptor ("Texas"), a term with ordinary descriptive meanings ("palladium," a precious metal made into coins and jewelry like silver, gold, and platinum), and a generic term ("properties"), and uses that combination to describe a Texas-based real estate business, the use is descriptive regardless of the fact that the combination also identifies the source. As the Fifth Circuit explained in *Sugar Busters LLC v. Brennan*, the fair use defense "allows [the defendant] to use a term in good faith to describe its goods or services, but only in actions involving descriptive terms and only when the term is used in its descriptive sense rather than in its trademark sense." 177 F.3d 258, 270-71 (5th Cir. 1999). Here, the combination of geographic and generic terms makes clear Defendant uses these words in their descriptive sense.

The Complaint's failure to allege facts showing Defendant uses "Palladium" primarily as a trademark rather than descriptively—particularly when combined with the descriptive modifiers "Texas" and "Properties"—means the fair use defense is established on the face of the pleadings.

## IV. THE TRADEMARK MODERNIZATION ACT DOES NOT LOWER PLEADING STANDARDS

### A. The TMA Creates an Evidentiary Presumption at the Injunction Stage Only

Plaintiff's invocation of the Trademark Modernization Act fundamentally misconstrues that statute's scope and application. The TMA amended 15 U.S.C. § 1116(a) to provide that:

> A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order.

The statutory language makes clear <u>this presumption operates exclusively at the injunction stage</u>. The Fifth Circuit applied the TMA presumption in *Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co.*, 80 F.4th 536 (5th Cir. 2023), when reviewing a district court's grant of a preliminary injunction. The court explained that under the TMA, once a plaintiff shows likelihood of success on the merits, the burden shifts to defendant to rebut the presumption with evidence showing a lack of irreparable harm. This burden-shifting framework operates during preliminary injunction proceedings where parties present evidence, not at the pleading stage where only allegations matter. (Additionally, Defendant has completed a rebrand in the name of "Nickell Realty" and is no longer using "Texas Palladium Properties," mooting the need for any injunction.)

The Third Circuit in *Nichino Am., Inc. v. Valent U.S.A. LLC*, 44 F.4th 180 (3d Cir. 2022), established a three-step framework for applying the TMA presumption: (1) court assesses likelihood of success on the merits without considering irreparable harm, (2) if plaintiff shows likelihood of success, TMA presumption arises and burden shifts to defendant to introduce rebuttal evidence showing consumer confusion is unlikely to cause irreparable harm, and (3) if defendant successfully rebuts with affirmative evidence, the presumption has no further effect and plaintiff must independently prove irreparable harm. *Id.* at 185-86. This framework operates when parties have the opportunity to present evidence—not at the Rule 12(b)(6) stage.

**B. Congressional Intent Focused on Injunction Standards, Not Pleading Requirements**

The TMA's legislative history demonstrates Congress intended to resolve the post-*eBay Inc. v. MercExchange*, 547 U.S. 388 (2006), circuit split regarding proof requirements for obtaining preliminary injunctions. Before *eBay*, courts presumed irreparable harm in trademark cases. After *eBay* eliminated this presumption in patent cases, circuits split on whether the same rule applied to trademarks. The TMA codified a rebuttable presumption nationwide.

House Report 116-645 discussing the TMA focused on difficulties trademark owners faced obtaining injunctive relief post-*eBay* and cited examples where preliminary injunctions were denied despite likelihood of success on the merits. The report makes no mention of pleading standards or Rule 12(b)(6) motions. Moreover, the rule of construction in Section 6(b) of the TMA states the amendment "shall not be construed to mean that a plaintiff seeking an injunction was not entitled to a presumption of irreparable harm before the date of the enactment," indicating Congress aimed to restore prior practice regarding injunctions, not to change substantive pleading requirements.

**C. Irreparable Harm Is Not an Element Requiring Pleading at the Complaint Stage**

Irreparable harm is an equitable prerequisite for obtaining injunctive relief, not an element of the underlying trademark infringement cause of action. To state a claim for trademark infringement under the Lanham Act, plaintiffs must allege ownership of a valid trademark and defendant's use creating likelihood of confusion. *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017). Irreparable harm becomes relevant only when plaintiff seeks preliminary or permanent injunctive relief, at which point evidence must be presented to satisfy equitable prerequisites for extraordinary relief.

Even before the TMA, courts did not dismiss trademark complaints under Rule 12(b)(6) for failure to plead irreparable harm because it is not an element requiring pleading. The TMA simply created a burden-shifting presumption under Federal Rule of Evidence 301 at the stage when plaintiffs seek injunctions—after the complaint has survived any motion to dismiss and plaintiff

must prove entitlement to equitable relief. <u>Nothing in the TMA suggests plaintiffs can allege fewer facts about likelihood of confusion or that courts should apply less rigorous scrutiny at the pleading stage.</u>

Plaintiff's suggestion that the TMA somehow lowers the bar for pleading trademark claims finds no support in the statute's text, legislative history, or judicial interpretation. The heightened pleading standards established in *Twombly* and *Iqbal* apply with full force to trademark cases, requiring specific factual allegations that make the claim plausible—not merely possible.

## VI. CONCLUSION

Plaintiff's Opposition confirms what the Motion to Dismiss demonstrated: the Complaint fails to allege specific facts showing how consumer confusion occurs in the context of this case. The cases Plaintiff cites involved detailed factual allegations, documentary evidence, or extraordinary circumstances entirely absent here. The Complaint's bare assertions that marks are "strong," services "overlap," and Defendant acted "with knowledge" are precisely the type of conclusory allegations that *Iqbal* teaches cannot survive a motion to dismiss.

Moreover, the Complaint itself establishes descriptive fair use by alleging only that Defendant uses geographic and generic descriptors to identify a Texas-based real estate business—the paradigmatic case for fair use protection. Plaintiff's invocation of the Trademark Modernization Act misconstrues that statute's application to preliminary injunction proceedings and cannot lower the pleading standards established by the Supreme Court.

For these reasons, and those stated in the Motion to Dismiss, Defendant respectfully requests that the Court grant the Motion and dismiss Plaintiff's Complaint with prejudice.

Dated: October 7, 2025

Respectfully submitted,

**HENDERSHOT COWART P.C.**

By: /s/ Philip D. Racusin
SIMON W. HENDERSHOT, III
State Bar No. 09417200
trey@hchlawyers.com
PHILIP D. RACUSIN
State Bar No. 24054267
pracusin@hchlawyers.com
1800 Bering Drive, Suite 600
Houston, Texas 77057
Telephone: (713) 783-3110
Facsimile: (713) 783-2809
E-Service: trey@hchlawyers.com,
pracusin@hchlawyers.com, and
paralegals@hchlawyers.com
**ATTORNEYS FOR DEFENDANT
DIANA NICKELL d/b/a
TEXAS PALLADIUM PROPERTIES**

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2025, a true and correct copy of the foregoing was served via electronic mail on:

Clifford Bowie Husted
Clark Hill PLC
1000 Louisiana Street, Suite 2800
Houston, Texas 77002
chusted@clarkhill.com

Evan Gourvitz
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
evan.gourvitz@ropesgray.com

/s/ Philip D. Racusin
Philip D. Racusin